**Jober Upper Fifth Ave. LLC v Williams**

2026 NY Slip Op 31068(U)

March 24, 2026

Civil Court of the City of New York, New York County

Docket Number: Index No. L&T 300092/24

Judge: Frances Ortiz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK, HOUSING PART T
-----------------------------------------------------------------------X
Jober Upper Fifth Ave. LLC

                                        Petitioner(s), Landlord

        -against-

                                                              **Index No. L&T 300092/24**

                                                              **POST TRIAL**
                                                              **DECISION AND ORDER**

Michael Williams
                                        Respondent-Tenant

John Doe &/or Kimberly Bivens,

                                        Respondent-Undertenant
-----------------------------------------------------------------------X

**FRANCES A. ORTIZ, JUDGE**

        This is a non-primary residence holdover proceeding seeking possession of 1325 Fifth

Avenue, apt. 3-A, New York, NY 10029 ("the subject premises") from Respondent, tenant,

Michael Williams and Kimberly Bivens, Respondent/Undertenant.  The grounds for the holdover

are that under *9 NYCRR §2523.5 (b) (1),* Respondent, Michael Williams ("Michael"), is not

primarily residing at the subject premises.  Petitioner is Jober Upper Fifth Avenue.  Specifically,

Petitioner's notice of termination indicates that Michael Williams does not reside at the subject

premises as his primary residence and instead resides, upon information and belief, at Morris

Park Rehabilitation and Nursing Home, located at 1235 Pelham Parkway North, Bronx, New

York 10469; that during the pendency of a non-payment proceeding against Michael Williams

under *Index Number 311972/ 2022,* Kimberly Bivens appeared in court and represented that

Michael Williams did not reside at the subject premises, and instead resides at Morris Park

Rehabilitation and Nursing Home; that during the pendency of the non-payment a Guardian Ad

1

[* 1]

Litem was appointed for Mr. Williams namely Della DeKay who further confirmed after conversations with the Morris Park Rehabilitation and Nursing Home, that Michael Williams did not have a discharge plan and is a long term resident at the facility; that the landlord's building staff have further confirmed; and that Michael Williams had not been seen occupying the premises for at least the preceding 6 months and instead the premises are occupied by Kimberly Bivens. Lastly, per paragraph six (6) of the petition, the subject premises is subject to the Rent Stabilization Law.

Respondent, Michael Bivens appeared by his Guardian Ad Litem, Della DeKay. Judge Vanessa Fang pursuant to a Decision and Order dated September 30, 2024 deemed his answer a general denial.

Co – Respondent, Kimberly Bivens appeared by counsel with a written answer asserting a succession defense and counterclaim pursuant to *9 NYCRR §2523.5 (b) (1); 9 NYCRR §2520.6; 9 NYCRR §2520.6 (o)* and pursuant to *Braschi v Stahl Associates Co., 74 N.Y.2d (1989),* under a non-traditional family member relationship by a showing of an emotional and financial commitment and interdependence with the tenant of record – Michael Williams. *(NYSCEF Doc. 7).*

This Court over the objection of the Petitioner pursuant to a decision and order dated October 8, 2024 *(NYSCEF Doc. 14)* ordered that it would in the interest of judicial economy initially proceed with the holdover proceeding instead of the non-payment proceeding against Michael Williams. It further reasoned that it could potentially be argued that the succession counterclaim raised by Kimberly Bivens in the non-payment may not be heard in that proceeding. Lastly, Ms. Bivens' succession defense and counterclaim can only be triggered upon the showing of a permanent vacatur of Michael Williams which is an issue for trial.

2

[* 2]

On November 18, 2024, January 3, 2025, January 29, 2025 and April 1, 2025 this Court conducted a trial on the matter. Petitioner and Respondent/Undertenant Kimberly Bivens appeared by counsel. Respondent, tenant, Michael Williams appeared by his GAL, Della DeKay. Respondents on the record conceded to the elements of the petition, and Petitioner did not have to establish at trial its *prima facie* elements of the petition. Accordingly, Petitioner rested. Moreover, Respondent, Michael Williams rested on his general denial defense. As such, the burden shifted to Respondent/Undertenant Kimberly Bivens to establish by a preponderance of the evidence her succession counterclaim under the Rent Stabilization Laws.

## EVIDENCE

Respondent - Bivens had admitted into evidence at least twenty-five (25) exhibits which include the following:

- A – NYSCEF Doc. 9 – letter dated May 14, 2024 from Morris Park Rehabilitation and Nursing Home
- B1 – New York State Department of Motor Vehicles ("DMV") Records for Kimberly Bivens
- B2 – DMV Learner's Permit
- C – DSS/HRA records
- D1 – D3 – Photographs
- E1 – E2 – Photographs
- F – Capital One bank records
- G – Mount Sinai medical records
- H – Time Warner cable
- I – Spectrum cable
- J1 – HPD open violations for subject premises
- J2 – HPD closed violations
- K1 – 1099 tax record year 2020 for Bivens
- K2 – 1099 tax record year 2021 for Bivens
- K3 & K4 – 1099 tax record year 2022 for Bivens
- K5 & K6 – 1099 tax record year 2023 for Bivens
- L1 & L2 – videos
- M – Capital Bank joint account records
- N – Capital Bank checking account records

3

[* 3]

Petitioner admitted into evidence one (1) exhibit which is a certified Board of Election voting document for Ms. Bivens.

## TESTIMONY

Respondent, Kimberly Bivens, called two witnesses on her behalf, including herself and her son, Noah De Jaun Ramos. Petitioner did not call any rebuttal witnesses.

Kimberly Bivens testified that she moved into the subject premises for "love" with Michael Bivens the lease holder around 2010 and her daughter Jordan Bivens; that they had known each other for nearly forty years; that they reunited around 2009 and Michael became her partner for fourteen years; that she helped with the household chores which included cleaning, laundry, and cooking; that she helped Michael find employment as a driver in a limousine company she was working for; that Michael paid for most of the household costs; that they were like family; that Michael was a father figure to her sons and especially so to her youngest daughter, Jordan Bivens; that she loved Michael's smile; that they celebrated family birthdays which was supported by photographs in evidence showing her and Michael at her aunt's 80th birthday party and in another photo of her and Michael in Central Park and another one taken of her and Michael at her son's baby shower; that Michael was diagnosed with dementia in 2015; that Michael needed help with his medications, dressing, bathing, eating; that he would defecate on himself; that her daughter and then son-in-law became his home attendants; that Michael would eat the wood off the floor and that's when she realized she could no longer care for him; that for six years she slept on the living room couch at the subject premises to make sure she heard him in order to prevent him from wandering and leaving the apartment; that since he has been in the nursing home she can not bare to visit him because she is afraid he might die, if she

4

[* 4]

goes in person, that instead she participates in virtual visits; that she was the designated health care proxy for Michael; that she had a joint savings and checking bank account with Michael, since 2009 *(Respondent's F in evidence – Capital One bank records);* that she and Michael usually went to the movies on Saturdays; that she celebrated all holidays with Michael except Thanksgiving because he would go visit family in North Carolina; that her children and Michael's grandchildren would celebrate holidays together and go to church; that about five to seven years ago Michael's son and his family lived with them for a year before moving to North Carolina; and that her employment records (1099 in Evidence) list the subject premises as her home. *(Respondent's K(1) – K (6) in evidence – 1099 tax years 2020 - 2023).*

On cross-examination Ms. Bivens testified that Michael moved into the nursing home after Thanksgiving of 2021; that Michael fell and went into the nursing home; that she could not keep him at the subject premises because he was at a greater risk of getting hurt and she could not get the extended hours of home care for him; that Michael was provided with only six hours of home care and she worked and could not fully care for him; that Michael was permanently placed in long term care at Morris Park Nursing Facility; that it was her decision to have Michael placed at the nursing facility, since she was his health care proxy but did not have a copy because Michael ruined it, since he tore papers as part of his dementia including urinating on the papers; and that she did not marry Michael because he had been divorced and she was still separated from her husband.

On re-direct Ms. Bivens testified that she is still married to John Williams but has been separated from him over 10 to 15 years ago; that she has been together with Michael for fourteen (14) years but knows him over forty (40) years; that Michael is her "person" also known as her boyfriend and partner; that the subject premises is her primary residence; that she has been

[* 5]

receiving mail there since she moved in 2010; that Michael paid the rent and the Con Ed bills and she paid the groceries and cable bill; that Michael's favorite dish was hot dogs with onions and mustard; that she does not have a joint bank account with anyone other than Michael; that it was hard living with Michael while he was sick because he was like a "child;" that Michael is not returning home; that she has been very lonely since Michael went to the nursing home; that living in the apartment without Michael makes her family a broken one; that it's like a nightmare; that Michael meant the world to her; that she feels robbed of him; and that she is the person the nursing home calls for any health care decisions made for Michael.

Noah De Jaun Ramos testified that Kimberly Bivens is his mother; that he is the middle child of six children; that everyone gathers together to celebrate the holidays; that his mother lives at the subject premises; that she has lived there a long time but he estimates about 14 years; that his mother has resided at the subject premises with his sister Jordan and Michael; that Michael is like her mother's husband without the ring literally; that they did a lot of things together; that Michael was like a stepdad to him; that he met Michael about 14 years ago; that his mother and Michael were in love; that they spend a lot of time together and used to go out to dinner and movie dates and spent holidays together; that his relationship with Michael was great; that they were both Met fans and they used to go to baseball games together; that when Michael got sick he took him to the movies a couple of times; that his earliest memory of Michael was when he had come home and gifted his mom an iPhone and he would ask his mom to borrow it because he was intrigued by the technology and the nature of it; that he spent time with Michael at baseball games, that they sat in the living room with him watching football because they were Giants fans; that they had Sunday night dinners together; that he met Michael's two children - Michelle and Rodney- and that he had a good relationship with them and would play with their

6

[* 6]

kids; that they celebrated holidays and birthday parties and in fact his son's first birthday party was celebrated at the subject premises; that Michael and his mom had a fantastic relationship; that when Michael got sick his mom was there for him cleaning - literally wiping his "butt;" that they were romantically in love and slept in the same bed every night; that he could tell they were in love by the way they looked at each other; then it's his mission in life to have a partner to look at him the way his mother looked at Michael; that the morning routine between Michael and his mother was when Michael was working at the time for the limousine company he would get up and he'd either make breakfast or his mother would make breakfast and she'd make him some coffee, then they would head out the door and his mother would start getting ready for work; that he visited Michael and his mother at the subject premises; that he actually spent nights there then because he felt very welcomed when he was there; and that he wants the Court to understand that his mother's relationship with Michael was truly genuine.

Petitioner called no rebuttal witnesses.

## DISCUSSION

In order to succeed to a rent stabilized tenancy a potential successor must demonstrate, by a preponderance of the evidence, the requisite familial relationship with the tenant of record, which includes parents, children, grandparents, grandchildren and certain non-traditional family members (*see 9 NYCRR §2523.5 (b) (1)* ; *9 NYCRR §2520.6 (o)*) and co-residency for a one- or two-year period prior to the tenant of record's permanent vacatur, the shorter timeframe applicable where the potential successor is disabled or elderly at the time of vacatur. *9 NYCRR §2523.5 (b) (1)).*

7

Further, in order to succeed to a rent stabilized tenancy as a non-traditional family member, the potential successor must demonstrate that they are 1) a *family member* whether biological, through marriage, or non-traditional, and 2) that they *primarily resided* with the tenant of record for two years or under certain circumstances one year immediately prior to the death or permanent vacatur of the tenant of record. *9 NYCRR §2523.5 (b) (1))*. The Rent Stabilization Code provides factors to be considered when determining whether a person has sufficient emotional and financial commitment to the former tenant of record to qualify for succession. *9 NYCRR §2520.6 (o) (2)*. These factors, none of which are solely determinative, include, without limitation:

"i. longevity of the relationship;

ii. sharing of or relying upon each other for payment of household or family expenses, and/or other common necessities of life;

iii. intermingling of finances as evidenced by, among other things, joint ownership of bank accounts, personal and real property, credit cards, loan obligations, sharing a household budget for purposes of receiving government benefits, etc.;

iv. engaging in family-type activities by jointly attending family functions, holidays and celebrations, social and recreational activities, etc.;

v. formalizing of legal obligations, intentions, and responsibilities to each other by such means as executing wills naming each other as executor and/or beneficiary, conferring upon each other a power of attorney and/or authority to make health care decisions each for the other, entering into a personal relationship contract, making a domestic partnership declaration, or serving as a representative payee for purposes of public benefits, etc.;

vi. holding themselves out as family members to other family members, friends, members of the community or religious institutions, or society in general, through their words or actions;

vii. regularly performing family functions, such as caring for each other or each other's extended family members, and/or relying upon each other for daily family services;

viii. engaging in any other pattern of behavior, agreement, or other action which evidences the intention of creating a long-term, emotionally committed relationship[.]"

*See 9 NYCRR §2520.6 (o) (2) [1] – [viii].*

8

Here, after trial, this Court must determine whether Kimberly Bivens has established by a preponderance of the evidence her affirmative defense and counterclaim of succession under to *9 NYCRR §2523.5 (b) (1) & (2); 9 NYCRR §2520.6; and 9 NYCRR §2520.6 (o)*. As an initial matter, the Court finds that the relevant permanent vacate date of the Respondent, Michael Williams, is December 7, 2021 *(NYSCEF Doc. 9 & Respondent's A in evidence)* which is the date that Michael Williams was admitted to Morris Park Rehabilitation & Nursing Center with no discharge plan. As such, Petitioner is entitled to a final judgment of possession against Respondent, Michael Williams based on its claim of non-primary residence against him with issuance and execution of the warrant of eviction forthwith.

Now, the Court turns to Kimberly Bivens' succession claim to the Rent Stabilized tenancy of former tenant of record, Michael Williams. Kimberly Bivens credibly testified that Michael Williams vacated the subject premises after Thanksgiving of 2021; that she was involved in a romantic relationship with Michael for fourteen (14) years and has known him for over forty (40) years; that Michael is her boyfriend and partner; that Michael meant the world to her; that she moved into the subject premises with Michael in 2010 and continues to live there since then; that she shared household expenses with Michael like the groceries and cable bill; that Michael paid the rent and provided for her; that Michael and she had their adult children living with them at one time; that Michael was a father figure to her daughter and sons which was corroborated by the testimony of Noah Ramos' relationship with Michael; that she celebrated holidays, birthdays and occasions like baby showers which was corroborated by the photographs in evidence; that she was Michael's health care proxy and is the contact person for Michael at the nursing home; that she had joint Capital One checking and savings account with Michael since 2009 *(Exhibits F, M & N in evidence);* that she and Michael went to the movies

9

together and that she cooked Michael's favorite meals for him; and that when Michael was diagnosed with dementia and when the disease progressed she cared for him by feeding him, accompanying him to medical appointments, cleaning and bathing him and even sleeping on the couch to prevent him from wandering out of the subject premises at night.

Based on the above credible testimony, Kimberly Bivens has sufficiently established an emotional and financial commitment to the former tenant of record, Michael Williams, under the non-traditional relationship factors of *9 NYCRR §2520.6 (o) (2).*

Moreover, Kimberly Bivens established at trial based on the documentary and testimonial evidence that during the relevant time period of December 7, 2019 through December 7, 2021, she resided at the subject premises with Michael Williams, as her primary residence. Specifically, the following documents: the New York State Motor Vehicles documents *(Respondent's B1 & B2)*, bank statements *(Respondent's F, M & N in evidence)*, IRS 1099 Tax Forms from 2020 – 2023 *(Respondent's K(1) – K (6) in evidence)*, listed the subject premises as Ms. Bivens' residence. These types of documents are given great weight in factors considered for primary residence and succession claims. *865 First LLC v. New York State Div. of Hous. & Cmty. Renewal, 210 A.D.3d 456, 458 (1st Dep't 2022).*

Besides Ms. Bivens' testimony and documentary evidence submitted on her behalf, there was further corroborating testimony from Noah Ramos regarding her relationship with Michael Williams and co-residency with him during the relevant time period.

However, Petitioner failed to rebut Ms. Bivens contemporaneously resided with Mr. Williams at the subject premises as her primary residence for at least two years during the relevant time period. Petitioner offered no rebuttal testimony.

10

[* 10]

Based on the foregoing, this Court finds that Kimberly Bivens is the successor to the tenancy of the prior Rent Stabilized tenant, Michael Williams, of the subject premises. The Court dismisses the instant holdover petition against Respondent, Kimberly Bivens. Petitioner is to recognize Kimberly Bivens with all the rights, obligations and Rent Stabilized status afforded the former tenant of record and forthwith offer Kimberly Bivens with a successor renewal lease to the subject premises.

Lastly, the Court turns to Respondent-Bivens' counterclaim for an Order to Correct. Upon a review of the Department of Housing Preservation and Development ("HPD") website and *Respondent's J (1) in evidence* there are open HPD violations for the subject premises. Accordingly, Petitioner is ordered pursuant to *New York City Civil Court Act §110 (c)* to correct any currently open HPD violations for the subject premises within thirty days of access. Access to be arranged between the parties.

ORDERED: Petitioner is awarded a final judgment of possession against Respondent, Michael Williams, with issuance and execution of the warrant of eviction forthwith and earliest execution date is March 25, 2026.

ORDERED: The holdover petition against Kimberly Bivens is dismissed with prejudice.

And further

ORDERED: Petitioner is to recognize Kimberly Bivens with all the rights, obligations and Rent Stabilized status afforded the former tenant of record, Michael Williams for 1325 Fifth Avenue, apt. 3-A, New York, NY 10029.

And further

ORDERED: Respondent's counterclaim for an Order to Correct is granted.

11

This is the decision and order of this court. The parties are directed to pick up their exhibits, if any, within thirty days or they will either be sent to the parties or destroyed at the Court's discretion in compliance with DRP-185. Copies of this decision will be uploaded to NYSCEF and emailed to GAL – Della DeKay at dldekay@yahoo.com.


Dated: New York, NY
        March 24, 2026

                                            _____  Hon. Frances Ortiz
                                               Judge, Civil/Housing Court
                                                     Frances Ortiz

12

[* 12]